IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES DUNBAR,<br><br>      **Petitioner,**<br><br>v.<br><br>DAN SPROUL,<br><br>      **Respondent.** | Case No. 20-CV-00506-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Petitioner James Dunbar, an inmate of the Federal Bureau of Prisons currently incarcerated at United States Penitentiary Marion, brings this habeas corpus action pursuant to 28 U.S.C. § 2241 (Doc. 1). He invokes *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243 (2016), to argue that the Government improperly cited his Kentucky drug convictions as prior felony drug convictions to subject him to an enhanced sentence as a career offender for his federal drug conviction under 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and 851. A jury found Dunbar guilty and he was given a below-Guidelines-range sentence of 240 months. As relief, Dunbar asks this Court to vacate his sentence and remand back for further disposition. He does not contend that he is innocent of the federal crime. Respondent filed a Response to the Petition (Doc. 9). Dunbar filed a Reply (Doc. 15).[1]

---

[1] Respondent also filed a Motion for Leave to File Supplemental Authority (Doc. 14). In that motion, Respondent cites the United States Court of Appeals for the Seventh Circuit's recent decision in *U.S. v. Nebinger*, 987 F.3d 734, 738 (7th Cir. 2021), which appears to dismiss the oft-

**RELEVANT FACTS AND PROCEDURAL HISTORY**

In July 2009, Dunbar was named along with twenty other defendants in a superseding indictment in the Western District of Kentucky, *United States v. Dunbar*, 5:09-CR-00015-TBR-6 ("Criminal Case"). In Count One, Dunbar was charged with conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base in violation of 18 U.S.C. § 841(a)(1).

In June 2010, the United States filed a notice pursuant to 21 U.S.C. § 851 alleging prior convictions:

> On April 2, 2003, the defendant was convicted in Christian County Circuit Court, Hopkinsville, Kentucky, case numbers 02-CR-00421 and 02-CR-00317, of trafficking in a controlled substance in the first degree, and that on February 8, 2006, defendant was convicted in Christian County Circuit Court, Hopkinsville, Kentucky, case number 04-CR-00615, of trafficking in a controlled substance within 1000 yards of a school

(Doc. 9-3). Dunbar did not file an objection or other response to the Notice.

In January 2011, a jury found Dunbar guilty of Count One (Doc. 9-2). The Sealed Presentence Investigation Report ("PSR") is located at Doc. 10-1. Dunbar's criminal history included convictions in two separate cases in Christian County, Kentucky, for trafficking in a controlled substance in the first degree in April 2003 and for trafficking in a controlled substance within 1000 yards of a school in February 2006. He was sentenced to seven years and one year imprisonment, respectively, on those convictions (Doc. 10-1, pp. 18-19).

---

advanced argument that *Mathis*-type challenges were not available before that ruling. The Court **GRANTS** the motion, however, the decision in *Nebinger* did not factor into the Court's determination in this case. As an aside, *Liscano v. Entzel* further applies this ruling to the Section 2241 context. 2021 WL 855836, at *1 (7th Cir. Mar. 8, 2021).

Dunbar filed objections to the PSR. He objected to the sentencing options, but he did not object to the criminal history portion (Criminal Case Doc. 712).

In May 2011, Dunbar was sentenced to life imprisonment under the § 851 enhancement (Doc. 9-2). On direct appeal, Dunbar argued that the Fair Sentencing Act of 2010 ("FSA") should apply to his case based on *Dorsey v. United States*, 567 U.S. 260 (2012). The United States Court of Appeals for the Sixth Circuit agreed, vacating Dunbar's sentence and remanding for resentencing. *See U.S. v. Moore*, 495 Fed. App'x 680 (6th Cir. 2012). The FSA reduced sentencing for Dunbar from a statutorily mandated life sentence to a statutory range of 10 years to life based on his prior felony drug offenses under 21 U.S.C. § 841(b)(1)(B) (Doc. 9-4, p. 4). At resentencing in May 2013, the parties agreed that Dunbar was a career offender, resulting in an offense level of 37, a criminal history category of VI, and a Sentencing Guidelines range of 360 months to life. (*Id.* at 3-4). The court ultimately sentenced Dunbar to a below-Guidelines sentence of 240 months' imprisonment. The Sixth Circuit affirmed that sentence in *U.S. v. Joseph*, 604 Fed. App'x 437 (6th Cir. 2015) and the United States Supreme Court denied Dunbar's petition for certiorari.

### GROUNDS FOR HABEAS RELIEF

Dunbar argues that, after *Mathis v. United States*, *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), and *Najera-Rodriguez v. Barr*, 926 F.3d 343 (7th Cir. 2019), reh'g denied (Aug. 23, 2019), his Kentucky drug convictions no longer qualify as prior felony drug offenses. But *Mathis*, *Elder*, and *Najera-Rodriguez*

are ultimately of no assistance to Dunbar and do not warrant the granting of habeas relief.

## APPLICABLE LEGAL STANDARDS

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A Section 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). A prisoner is also normally limited to only *one* challenge of his conviction and sentence under Section 2255. He or she may not file a "second or successive" Section 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Under very limited circumstances, however, it is possible for a prisoner to challenge his federal conviction or sentence under Section 2241. Specifically,

Section 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a Section 2241 petition where the remedy under Section 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See also Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012) (stating that "'[i]nadequate or ineffective' means that 'a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence.'") (citing *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002)); *United States v. Prevatte*, 300 F.3d 792, 798-799 (7th Cir. 2002) (noting that "savings clause" of Section 2255 applies to "a narrow class of cases" where the 2255 remedy "'is inadequate or ineffective to test the legality of [the prisoner's] detention.'"). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998) and stated: "[a] procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Id.* at 611. In other words, "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

Following *Davenport* and its progeny, the Seventh Circuit developed a three-part test for determining whether Section 2255 is inadequate or ineffective so as to trigger the savings clause:

- Step #1: the federal prisoner must seek relief based on a decision of statutory interpretation (as opposed to a decision of constitutional

interpretation, which the inmate could raise in a second or successive § 2255 motion);

• Step #2: the statutory rule of law in question must apply retroactively to cases on collateral review *and* could not have been invoked in a first § 2255 motion; and

• Step #3: a failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of justice."

*Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020) (emphasis in original).

## ANALYSIS

The applicable version of 21 U.S.C. § 841(b)(1)(B) mandates a statutory range of 10 years to life for a defendant who had a "felony drug offense." Section 802 defines "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). "Narcotic drugs" include "Opium, opiates, derivatives of opium and opiates" and "Cocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. §§ 802 (17)(A) and (D).

Dunbar argues that he should not have been exposed to the enhancement because Kentucky's Trafficking in Controlled Substance statutes in KRS § 218A, which both of Dunbar's prior convictions in the Section 851 Notice fall under, are broader than the federal definition of a felony drug offense. The Kentucky statutes include Salvia and Dextrorphan, among other drugs, but the federal definition does not. (Doc. 1, p. 11-12).

This Court need not reach the ultimate merits of Dunbar's argument that the Kentucky drug statutes criminalize a broader swath of conduct than does the federal statute because the third *Davenport* requirement, miscarriage of justice, is not met here. That requirement is satisfied by demonstrating "so fundamental a defect in [a] conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d at 611. The Seventh Circuit has also described a miscarriage of justice as "the possibility that the convictions hinged on conduct Congress never intended to criminalize." *Kramer v. Olson*, 347 F.3d 214, 218 (7th Cir. 2003). A miscarriage of justice may also occur where a defendant is sentenced under an erroneous mandatory sentencing range, but not where the error affects only the advisory Sentencing Guidelines. *See Hawkins*, 706 F.3d at 823-824.

Dunbar does not argue that he was convicted of a nonexistent offense or that he is innocent of the offense of which he was convicted. He claims that he went to trial by the threat of the life sentence represented by the Section 851 Notice and his decision-making calculus would have been different otherwise. That does not demonstrate a miscarriage of justice. Dunbar clearly proceeds from the faulty premise that the filing of a Section 851 Notice subjected him to a mandatory life sentence. However, the mere filing of the Section 851 Notice did not create a certainty that Dunbar would be subject to a mandatory life sentence. For example,

Dunbar could have challenged the Notice but did not.[2] *See* 21 U.S.C. § 851(c).

Dunbar also claims that miscarriage of justice occurred when he was designated as a career offender and his Sentencing Guidelines range was enhanced.[3] (Doc. 1, p. 5; Doc. 15, p. 5). The Sentencing Guidelines were only advisory at the time of his sentencing. A claim that a defendant was erroneously treated as a career offender under the advisory Sentencing Guidelines does not demonstrate a miscarriage of justice. *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013), *supplemented on denial of rehearing*, 724 F.3d 915 (7th Cir. 2013). *See also United States v. Coleman*, 763 F.3d 706, 708–09 (7th Cir. 2014).

The Sentencing Guidelines have been advisory and not mandatory ever since the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). *Perry v. United States*, 877 F.3d 751, 754 (7th Cir. 2017). Dunbar was sentenced in 2013, long after *Booker*. Further, his 240-month sentence was below the unenhanced statutory maximum of 40 years. Thus, there is not a miscarriage of justice here.

---

[2] Dunbar relies on *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018) to support his claim for habeas relief. In *Elder*, the defendant was subjected to a mandatory term of life imprisonment due to having two prior "felony drug offense" convictions. The Seventh Circuit, however, agreed with the defendant that one of the predicate convictions was not a "felony drug offense" within the meaning of 21 U.S.C. § 802(44). However, *Elder* is of no assistance to Dunbar as the defendant in *Elder* challenged his prior convictions by filing a motion to dismiss the Section 851 Notice.

[3] Dunbar switches between discussion and phrasing indicative of displeasure with his Sentencing Guidelines range and his statutory minimum and maximum, using terms like "statutory sentencing range," "congressional mandated sentencing range," and "advisory guidelines" in a way that makes his argument less than clear. However, the bulk of his citations focus on the Sentencing Guidelines.

CONCLUSION

For the reasons set forth above, James Dunbar's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. This action is **DISMISSED WITH PREJUDICE**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. *See* FED. R. APP. PROC. 4(a)(1)(B8). A motion for leave to appeal in forma pauperis ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725–726 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858–859 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. *See* FED. R. APP. PROC. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Petitioner to obtain a certificate of appealability

from this disposition of his Section 2241 Petition. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED:  April 1, 2021**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
